# EXHIBIT A

2025 WL 1743939
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

SOUTHERN UTAH WILDERNESS
ALLIANCE, Plaintiff,
v.
U.S. DEPARTMENT OF the
INTERIOR, et al., Defendants.

Civil Action No.: 24-2476 (RC)
|
Signed June 24, 2025

**Attorneys and Law Firms**

Hanna C. Larsen, Pro Hac Vice, Landon Newell, Pro Hac Vice, Salt Lake City, UT, William Stewart Eubanks II, Elizabeth Leigh Lewis, Eubanks & Associates, PLLC, Washington, DC, for Plaintiff.

John Karl Heise, Alison C. Finnegan, DOJ-United States Attorney's Office, Washington, DC, for Defendants.

MEMORANDUM OPINION

RUDOLPH CONTRERAS, United States District Judge

GRANTING STATE OF UTAH'S
MOTION TO INTERVENE

I. INTRODUCTION

**\*1** In August 2024, Plaintiff Southern Utah Wilderness Alliance ("SUWA") filed suit against the Department of the Interior ("DOI"), DOI's Bureau of Land Management ("BLM"), and Christina Price in her official capacity as the Deputy State Director, Lands and Minerals, in BLM's Utah State Office (collectively, "Defendants"), regarding BLM's 2024 decision to reaffirm thirty-five oil and gas leases in southeastern Utah. BLM first decided to sell the leases at issue in 2018. SUWA sued, resulting in a settlement agreement where, *inter alia*, BLM agreed to prepare a supplemental analysis under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370m-12. After the completion of its analysis, BLM reaffirmed the leases. SUWA alleges that Defendants failed to comply with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, 701–706, NEPA, and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, when making their decision.

The State of Utah ("Proposed Intervenor" or "State") moved to intervene as a defendant as a matter of right under Federal Rule of Civil Procedure 24(a), and, in the alternative, for permissive intervention under Rule 24(b). SUWA and Defendants take no position. For the reasons stated below, the motion to intervene under Rule 24(a) is granted.

II. FACTUAL BACKGROUND

BLM manages more than 500,000 acres of the San Rafael Desert in southeastern Utah pursuant to the Price Field Office Resource Management Plan. *See* Am. Compl. ¶¶ 59, 153, ECF No. 8. In 2010, BLM started developing a "master leasing plan" ("MLP"), an additional analysis that would help the agency decide whether to sell new oil and gas leases in this area. *See id.* ¶¶ 59–61. But before finishing the MLP, in 2018 BLM began offering "hundreds of oil and gas leases in former-MLP areas, including the leases in the San Rafael Desert at issue in this litigation." *See id.* ¶¶ 67–70, 74. SUWA sued BLM in this Court. *See* Compl., ECF No. 1, *S. Utah Wilderness All. v. Bernhardt* ("*SUWA I*"), No. 1:20-cv-3654 (D.D.C. Dec. 14, 2020). SUWA argued that BLM failed to perform an environmental impact analysis and provide a reasoned explanation for the policy change as required by law. *See* Pl.'s Mot. Summ. J. at 27–32, ECF No. 56-1, *SUWA I*, No. 1:20-cv-3654. The parties settled the case. *See* Joint Status Rep., ECF No. 78, *SUWA I*, No. 1:20-cv-3654. In exchange for a stipulated dismissal, BLM agreed to prepare a supplemental NEPA analysis of the 2018 leasing decisions. *See* Am. Compl. ¶ 93; *see also* Ex. 3 to Compl. at 4, ECF No. 1-4. BLM finished its analysis in 2024 and reaffirmed its sale of the thirty-five oil and gas leases at issue in this litigation. *See* Am. Compl. ¶¶ 1–2. In August 2024, SUWA sued Defendants again, arguing that they violated the APA and NEPA when rendering their decision. *See* Compl. ¶¶ 114–39, ECF No. 1. SUWA later amended its complaint, adding alleged violations of the ESA. Am. Compl. ¶¶ 160–72.

The State of Utah filed its motion to intervene on April 9, 2025. State of Utah's Mem. in Supp. Mot. Intervene ("Mot."), ECF No. 25. The State participates "in the issuance and permitting of every federal oil and gas lease within Utah." Ex.

A to Mot. at 5, ECF No. 25-1. All the leases at issue are within the State's geographic borders. *See id.* at 2. Each of them generates revenue for the State and creates job opportunities for its citizens. *See id.* The current parties have taken no position on the State's motion to intervene. *See* Mot. at 2; Resp. to Prop. Intervenor's Mot. Intervene ("Resp.") at 1, ECF No. 28.

**\*2** While the motion to intervene was pending, SUWA moved for summary judgment. *See* Pl.'s Mot. Summ. J., ECF No. 29. Pursuant to the operative Scheduling Order, briefing on the parties' cross-motions for summary judgment is currently scheduled to conclude by August 26, 2025. Min. Order, No. 24-cv-2476 (RC) (D.D.C. Apr. 8, 2025).

### III. LEGAL STANDARD

The D.C. Circuit requires putative defendant-intervenors to demonstrate Article III standing by showing injury in fact, causation, and redressability. *See Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).

> Where, as here, a party seeks to intervene as a defendant to uphold an action taken by the government, the party must establish that it will be "injured in fact by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld."

*Forest Cty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 11 (D.D.C. 2016) (quoting *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001)). Additionally, courts in this Circuit require four elements for a party to intervene as of right under Rule 24(a): "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads*, 788 F.3d at 320. "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention,

and declarations supporting the motion as true absent sham, frivolity or other objections." *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)).

### IV. ANALYSIS

The Court first analyzes the State's constitutional standing, and then whether it satisfies the Rule 24(a) requirements for intervention as of right. Because the Court concludes that the State is entitled to intervene as of right, it does not consider permissive intervention.

The State has established Article III standing. In this lawsuit, SUWA seeks, *inter alia*, to vacate the thirty-five disputed leases and enjoin Defendants from issuing new leases for oil and gas development on BLM-managed public lands pursuant to the San Rafael Desert MLP. *See* Am. Compl. at 44–45. If the Court grants this relief, the State would be economically injured because "[r]evenue and royalties received from federal mineral leasing within the State [are] shared between federal and state governments." Mot. at 6. Thus, the economic injury to the State if the Court were to vacate the leases at issue would be both concrete and particular. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (explaining that "monetary harms" are some of the "most obvious" tangible harms that constitute concrete injuries under Article III). The State also has a regulatory interest at stake because of the time and resources it spends permitting "[o]il and gas extraction and production." *See* Mot. at 5; *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 640 F. Supp. 3d 59, 67 (D.D.C. 2022) (granting the State of Wyoming's motion to intervene in a case challenging federal drilling permits where Wyoming had "expended significant resources to regulate the use of private, state, and federal land, and to review and approve requests for state" permits, which were often required to apply for federal permits); *WildEarth Guardians v. Haaland*, No. 21-cv-175, 2021 WL 12241922, at \*2 (D.D.C. Apr. 20, 2021) (recognizing the State of Wyoming's "regulatory interests in cases involving the development of federal minerals within the State"). SUWA's success in this lawsuit would, at the very least, temporarily stall oil and gas drilling, and a successful defense of Defendants' actions would redress that potential injury by avoiding it. Therefore, the State has standing in this case.

\*3  Having met the requirements for standing, the Court's analysis of the Rule 24(a) requirements for intervention as of right is straightforward. First, the motion to intervene was timely filed.

> Timeliness "is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case."

Amador Cty. v. U.S. Dep't of Interior, 772 F.3d 901, 903 (D.C. Cir. 2014) (quoting United States v. British Am. Tobacco Austl. Servs., Ltd., 437 F.3d 1235, 1238 (D.C. Cir. 2006)). The State's motion to intervene was filed on April 9, 2025, before SUWA filed its Motion for Summary Judgment on April 25, 2025. See Mot. at 1; Pl.'s Mot. Summ. J. at 51. Neither party has argued that they will be prejudiced by the State's participation in the suit, nor that responding to the State's briefings will unduly disrupt or delay the litigation. See Mot. at 2; Resp. at 1. Thus, this Court finds that the motion to intervene is timely.

Further, this Court finds that the State has demonstrated a legally protected interest under Rule 24(a) and that an adverse action by this Court could impair or impede that interest. When a prospective intervenor "has constitutional standing, it *a fortiori* has 'an interest relating to the property or transaction which is the subject of the action.' " Crossroads, 788 F.3d at 320 (quoting Fund for Animals v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003)); see also Safari Club Int'l v. Salazar, 281 F.R.D. 32, 38 (D.D.C. 2012) ("The injury-in-fact and causation connection with the challenged action requirements for standing are closely related to the second and third factors under Rule 24(a) ....").

Finally, the Court agrees that the Defendants might not adequately represent the interests of the State. The adequate representation requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972). "[T]he burden of making that showing should be treated as minimal." *Id.* Here, the State seeks to defend its own regulatory interests to ensure the safety and security of Utahns, while also supporting "the long-term continuation and promotion of oil and gas leasing in Utah." Mot. at 7–8. Presumably, Defendants have an interest in defending BLM's decision-making process for issuing oil and gas leases on public land for the benefit of the American people broadly. *See id.* While similar, the State has sovereign interests that are narrower than Defendants'. "[T]here may be a partial congruence of interests, [but] that does not guarantee the adequacy of representation." Fund for Animals, 322 F.3d at 737; see also WildEarth Guardians v. Jewell, 320 F.R.D. 1, 5 (D.D.C. 2017) (finding that federal defendants did not adequately represent interests of states in cases challenging federal oil and leases); Akiachak Native Cmty. v. U.S. Dep't of Interior, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) (holding that federal defendants had no clear interest in protecting state sovereignty in cases challenging regulations that bar DOI from acquiring land on behalf of federally recognized tribes). Because this Court finds that it is not clear that the Defendants share the State of Utah's interests, the State of Utah has satisfied the final element of Rule 24(a).

## V. CONCLUSION

\*4  For the foregoing reasons, the State of Utah's Motion to Intervene (ECF No. 25) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

**All Citations**

Slip Copy, 2025 WL 1743939

---